# 99 DTA 151

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL I, SAN JUAN**

IVAN CABALLERO PLAZA
Recurrente

v.

GLADYS RIVERA CORREA, DIRECTORA DE CLASIFICACION
DE LA ADMINISTRACION DE CORRECCION
Recurrida

Núm. KLRA-98-00604

San Juan, Puerto Rico, a 10 de mayo de 1999

Panel integrado por su Presidente, Juez Rossy García
y los Jueces González Rivera y Ortiz Carrión

Ortiz Carrión, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

El caso del título trata sobre un recurso en que un recluso le solicita a este Tribunal que revise una decisión del Comité de Clasificación y Tratamiento de la Administración de Corrección de la institución penal en la cual cumple la pena que le fue impuesta. El recluso recurrente señala que en la decisión, cuya revisión solicita, el Comité de Clasificación y Tratamiento ratificó el nivel de custodia mediano en que se le mantiene recluido en la institución, y señala que esta decisión fue arbitraria, porque de su expediente surge que él cumple con los criterios establecidos por la reglamentación vigente para la asignación de un nivel de custodia mínima.

El recluso recurrente no cuestiona la validez del procedimiento utilizado por el Comité para hacer la evaluación del nivel de custodia en que se le mantiene recluido. Lo que plantea es que la decisión de mantenerlo recluido en un nivel de custodia mediana fue arbitraria; que no se le notificó por escrito; que no se le informó la disponibilidad de algún otro procedimiento administrativo para cuestionar esa decisión, y que no se le notificó sobre su derecho a solicitar revisión judicial ante este Tribunal. Ante tales planteamientos, es necesario determinar si este Tribunal tiene jurisdicción para atender el recurso; y de existir base para asumir jurisdicción, determinar el remedio apropiado.

# I

Al aprobar la Ley de Procedimiento Administrativo Uniforme, Núm. 170 de 12 de agosto de 1988, 3 L.P.R. A. secs. 2101 y ss., la Asamblea Legislativa de Puerto Rico tuvo el propósito de establecer un sistema uniforme para la revisión judicial de los procedimientos adjudicativos de todas las agencias administrativas del Estado Libre Asociado que no fuesen expresamente excluidas de su aplicación. Un examen de las secciones 1.3 (a) y 1.4 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. secs. 2102(a) y 2103, revela que la Administración de Corrección es una de las agencias sujetas a sus disposiciones por no estar excluida de su aplicación.

Por otra parte, el Artículo 7 de la Ley Orgánica de la Administración de Corrección, Núm. 116 de 22 de julio de 1974, según enmendada, 4 L.P.R.A. sec. 1101, 1121, establece el requisito de que todas las personas convictas por delitos graves deben ser clasificadas mediante un procedimiento de evaluación efectuado periódicamente, a los fines de determinar el plan de acción a tomar en cada caso. La Ley establece expresamente que al convicto se le explicará el propósito y los resultados de tales evaluaciones, a excepción de aquella información que se determine de carácter confidencial mediante reglamentación al efecto.

Para cumplir con este mandato legislativo la Administración de Corrección adoptó el Manual de Reglas para Crear y Definir Funciones del Comité de Clasificación y Tratamiento en las Instituciones Penales de 27 de febrero de 1979, aprobado como reglamento por el Secretario de Estado el 8 de marzo de 1979 con el Número 2485. El referido Reglamento crea los Comités de Clasificación y Tratamiento de las Instituciones Penales, y en su Regla 9 establece un procedimiento formal para realizar estas evaluaciones en el que se dispone lo siguiente:

*"A. Organización y Planificación de las Reuniones:*

*1. El jefe de la Institución Penal o su auxiliar será responsable del funcionamiento del Comité en cada institución. A esos efectos podrá delegar la planificación de las reuniones en el encargado de la Unidad de Servicios Sociopenales u otro empleado de dicha Unidad. Para el mejor funcionamiento del Comité, deberá observar lo siguiente:*

*a. Hasta donde sea posible, el Comité de cada institución deberá reunirse por lo menos una vez por semana.*

*b. Deberá prepararse una agenda de los casos a ser considerados en la reunión y el propósito de los mismos.*

*c. En cada institución se llevará un Libro de Actas (Minutas) de las reuniones donde se hará constar por escrito en cada uno de los casos evaluados la siguiente información:*

*1. Nombre del Confinado.*

*2. Situación o situaciones a evaluarse.*

*3. Acciones tomadas por los miembros y las razones para ello.*

*4. En caso de voto disidente de alguno de los miembros, dicho disenso y las razones para ello se hará constar por escrito figurando el nombre de la persona disidente.*

*d. Copia del acta (minuta) de cada reunión del Comité se incluirá en el expediente del confinado.*

*3. Procedimientos para Referir Casos al Comité:*

*1. Toda situación de un confinado para la consideración del Comité de Clasificación y Tratamiento será referido por o canalizado a través del Oficial de Servicios Sociopenales a cargo del caso.*

*2. El Oficial de Servicios Sociopenales preparará informe al Comité sobre el aspecto que se vaya a evaluar y el funcionamiento del confinado en las diferentes áreas. Dicho informe será presentado por el propio Oficial o en ausencia de éste por el Oficial de Servicios Sociopenales designado por el Superintendente.*

*C. Proceso de Evaluación y toma de Decisiones:*

*1. El Comité analizará toda la información que tenga del confinado a su disposición.*

*2. En este proceso el Comité podrá entrevistar al confinado para ampliar o clarificar la información del caso o situación bajo su consideración. A esos fines podrá hacer comparecer o solicitarle información a cualquier otro miembro del equipo de tratamiento que en alguna medida interviene con el confinado.*

*3. El Comité deliberará y tomará sus determinaciones conforme se establece en la Regla 5.*

*4. El Presidente del Comité o su representante hará comparecer al confinado ante el Comité y le interpretará los acuerdos tomados.*

*5. El Presidente o su representante consignará por escrito y firmará en el expediente criminal del confinado la fecha de la reunión y los acuerdos tomados.*

*6. Al tomar sus determinaciones el Comité podrá señalar la fecha de la próxima evaluación del caso. Esto no limita para que cuando surja la necesidad antes de la fecha señalada, el comité intervenga en el caso.*

*7. Cuando el comité tenga serias dudas en cuanto a las determinaciones finales a tomar en un caso, podrá referirlo a la Unidad de Evaluación y Asesoramiento."*

Además, la Regla 5 del referido Reglamento establece que los acuerdos del Comité de Clasificación y Tratamiento deben estar fundamentados por hechos e información sometida a su consideración, donde se evidencie la necesidad de la acción que se aprueba o recomienda. El referido Reglamento no establece ningún procedimiento ulterior mediante el cual los reclusos puedan cuestionar estas decisiones ante otro funcionario u organismo de la Administración de Corrección. Lo único que provee es para revaluación periódica por el mismo Comité mediante procedimiento similar.

La sección 1.3(b),(i) y (j) de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. 2102(b) (i) y (j), establece que el término *"adjudicación"* significa el procedimiento mediante el cual una agencia determina los derechos, obligaciones o privilegios que corresponden a cualquier persona. Asimismo, la Sección 3.1 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2151, establece que cuando por disposición de ley,

regla o reglamento, o de esta Ley, una agencia deba adjudicar formalmente una controversia, sus procedimientos de adjudicación deberán regirse por esta Ley. No cabe duda de que, bajo esta definición, el procedimiento de evaluación formal establecido por el referido reglamento constituye una *"adjudicación"*.

En virtud de tales disposiciones tampoco cabe duda de que las decisiones de los Comités de Clasificación de la Administración de Corrección que se hacen como resultado de los procedimientos establecidos para la evaluación del nivel de custodia en el que se mantiene a los reclusos en la institución, está regido por la Ley de Procedimiento Administrativo Uniforme.

Sin embargo, el referido Reglamento no cumple con lo dispuesto por la Sección 3.14 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2164, en el que se establece la forma y el contenido de las órdenes o resoluciones finales que emiten las agencias luego de concluir un procedimiento adjudicativo.

Aunque el referido Reglamento exige que el Comité haga determinaciones de hechos para fundamentar sus decisiones, éste no exige que el Comité exponga los criterios normativos aplicados en ese caso. Tampoco requiere que las decisiones se le notifiquen por escrito al recluso, advirtiéndole de su derecho a solicitar reconsideración o revisión judicial de la misma ante este Tribunal, con expresión de los términos correspondientes según dispone la Ley.

La Administración de Corrección plantea que en virtud de lo dispuesto por el referido Reglamento, las decisiones del Comité de Clasificación y Tratamiento están sujetos a revaluaciones periódicas para determinar cualquier cambio de circunstancias, por lo que este Tribunal debe interpretar que tales decisiones no son finales y, por consiguiente, no están sujetas a lo dispuesto por la sección 3.14 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2164. Sin embargo, tal interpretación de la Sección 3.14 es irrazonable ya que socavaría el sentido y significado del concepto de *"finalidad"* de un procedimiento adjudicativo. El hecho de que el referido Reglamento requiera que el Comité de Clasificación y Tratamiento efectúe estos procedimientos de evaluación periódicamente, no puede significar que las decisiones que toma al concluir el procedimiento de evaluación no sean finales. Estas decisiones le dan finalidad a una evaluación determinada, luego de un procedimiento formal determinado. Para que el Comité de Clasificación y Tratamiento tenga autoridad para revaluarlas periódicamente con el fin de determinar si existe algún cambio en las circunstancias, tiene que volver a cumplir con el procedimiento formal establecido por el referido Reglamento. Con un razonamiento similar, en el caso de *Figueroa v. Del Rosario,* **98 J.T.S. 151,** el Tribunal Supremo de Puerto Rico resolvió que los dictámenes del Tribunal de Primera Instancia sobre custodia y alimento de menores no constituyen cosa juzgada, ya que pueden ser modificados periódicamente de ocurrir un cambio en los hechos y circunstancias que así lo justifique, pero que, sin embargo, estos dictámenes no son interlocutorios ya que adjudican los derechos de las partes; de ahí que tales decretos deben considerarse como finales, y el recurso apropiado para solicitar su revisión es el recurso de apelación y no el de *certiorari*.

No existe razón en derecho para sostener que la decisión del Comité de Clasificación y Tratamiento cuya revisión se solicita no tuviese tal condición de finalidad. Pero, aun cuando se entendiese que tales decisiones no son estrictamente finales, la sección 4.3 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2173, establece que cuando no existe un remedio administrativo disponible para revisar la decisión cuya revisión se solicita, o el que hubiese disponible resultase tardío o inadecuado, el recurrente puede ser relevado de agotar remedios administrativos ulteriores y solicitar que el Tribunal asuma jurisdicción sobre su solicitud. En este caso, el referido Reglamento no provee un procedimiento mediante el cual el recluso pueda apelar la decisión del Comité de Clasificación y Tratamiento ante ningún otro organismo o funcionario de la Administración de Corrección, y las revaluaciones periódicas cada 6 meses o cada año que allí se proveen, no pueden considerarse un remedio adecuado, ya que ello privaría a los recurrentes de la revisión judicial; ya que, según interpreta la Administración de Corrección éstas no serían finales hasta la extinción de la pena.

Al ingresar por los portones de las instituciones penales, los reclusos no pierden la protección de la Constitución de los Estados Unidos y la Constitución del Estado Libre Asociado de Puerto Rico. Si una decisión arbitraria o irrazonable del Comité de Clasificación y Tratamiento sobre el nivel de custodia en que se mantiene a un recluso, no estuviese sujeta al procedimiento ordinario de revisión judicial que establece la Ley de Procedimiento Administrativo Uniforme, toda la normativa aplicable al nivel de custodia en que se les mantiene a los reclusos durante el cumplimiento de la pena que le fue impuesta por un Tribunal estaría en un limbo jurídico.

Ni la Administración de Corrección ni este Tribunal pueden soslayar el hecho de que, desde hace casi medio siglo, los forjadores de la Constitución del Estado Libre Asociado de Puerto Rico le confirieron una dimensión constitucional al tratamiento de los reclusos, con el propósito de hacer posible su rehabilitación moral y social a la medida de los recursos disponibles por el Estado. Los forjadores de la Constitución del Estado Libre Asociado estaban tan convencidos sobre la importancia que tiene este objetivo para el bienestar general del país, que decidieron otorgarle rango constitucional en la sección 19 del Artículo VI de la Constitución del Estado Libre Asociado en la que se dispone lo siguiente:

*"Será política pública del Estado Libre Asociado ... reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social."*

Esta disposición constitucional constituye un mandato sujeto a la única condición de la disponibilidad de recursos, por lo que debe cumplirse rigurosamente por los organismos del Estado, y prevalece sobre cualquier ley, reglamento o determinación administrativa que lo contravenga. *Misión Industrial de Puerto Rico, Inc. v. Junta de Calidad Ambiental,* **98 J.T.S. 77,** a la pág. 1101. De tal modo, cualquier decisión o determinación de las instituciones o funcionarios del Estado Libre Asociado que afecte la rehabilitación social y moral de las personas recluidas en las instituciones penales del país, debe responder cabalmente a este mandato. La sección 19 del Artículo VI fija de modo incuestionable el criterio jurídico para juzgar la validez o interpretar el significado de cualquier norma o decisión relativa al tratamiento de los reclusos en las instituciones penales que pueda afectar adversamente su rehabilitación social y moral.

A la Asamblea Legislativa de Puerto Rico le corresponde instrumentar este mandato mediante la aprobación de la legislación apropiada. Con este fin, la Asamblea Legislativa aprobó la Ley Orgánica de la Administración de Corrección, Núm. 116 de 22 de julio de 1974, según enmendada (Sup. 1998), 4 L.P.R.A. sec. 1101 y ss., en cuyo Artículo 4 le delega el deber de estructurar la política pública en el área de corrección y organizar los servicios de corrección al propósito de que la rehabilitación tenga la más alta prioridad entre los objetivos del gobierno del Estado Libre Asociado mediante la implantación de un mejor tratamiento individualizado; incorporando en el proceso rehabilitativo amplias oportunidades para adquirir destrezas, adiestramiento y conocimientos¡ que faciliten al cliente el retornar a la comunidad debidamente equipado para asegurar una subsistencia decorosa; utilizando el método de rehabilitar en la comunidad en la mayor dimensión posible mediante programas de trabajo, estudio o tratamiento, cuando ello sea compatible con la seguridad pública. Conforme a estos propósitos, la Ley Orgánica de la Administración de Corrección requiere que la Administración de Corrección adopte la reglamentación necesaria para establecer programas de clasificación, tratamiento y rehabilitación de la clientela del sistema correccional. En cumplimiento con su Ley Orgánica la Administración de Corrección adoptó el referido Manual de Reglas para Crear y Definir Funciones del Comité de Clasificación y Tratamiento en las Instituciones Penales de 27 de febrero de 1979, en el cual se establecen criterios sustantivos que rigen los niveles de custodia en que se mantiene a los reclusos, para promover su rehabilitación. Así, por ejemplo, la Regla 10 del referido Reglamento establece los siguientes criterios para determinar la elegibilidad de un recluso para custodia mínima. ■

El examen de todo este contexto jurídico nos obliga a concluir que el ordenamiento jurídico de Puerto Rico crea una expectativa objetiva razonable de que el Comité de Clasificación y Tratamiento le asignará a los reclusos el nivel de custodia mínimo cuando éstos cumplan con los criterios substantivos establecidos por la reglamentación vigente.

En una jurisdicción como Puerto Rico en la cual la rehabilitación moral y social de los reclusos se señala en la Constitución como un objetivo primordial del Estado, resulta un contrasentido decidir que el ordenamiento jurídico no le crea a los reclusos una expectativa objetiva razonable a que se le asigne el nivel de custodia que corresponda a los criterios substantivos establecidos por la reglamentación vigente, por el hecho de que tal reglamentación también autoriza el uso de factores subjetivos por parte de los funcionarios a cargo de administrarla. Privar a los reclusos del derecho a la revisión judicial de tales decisiones, tendría el efecto de tronchar el derecho a cuestionar cualquier determinación mediante la cual se les prive arbitrariamente de las expectativas objetivas creadas por el propio ordenamiento jurídico del Estado Libre Asociado. Sobre esto véase, el escrutinio propuesto por el Juez Asociado Marshall, con la concurrencia de los Jueces Asociados Brennan y Stevens en Kentucky *Department of Corrections v. Thompson,* 490 U.S. 454, 465 (1989).

Por otra parte, la Administración de Corrección tampoco puede soslayar el hecho de que el recurrente y las demás personas recluidas en las instituciones penales de Puerto Rico son parte en un pleito de clase incoado contra el Gobernador y la Administradora de Corrección del Estado Libre Asociado ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, en el que ante planteamientos de violaciones al derecho a un debido proceso de ley que les garantizan la Quinta y la Decimocuarta Enmienda de la Constitución de los Estados Unidos, los demandados estipularon el establecimiento de un nuevo procedimiento administrativo para evaluar los niveles de custodia en el que se mantiene a las personas recluidas en las instituciones penales de Puerto Rico. Tal estipulación es totalmente inconsistente con la postura de la Administración de Corrección en este caso, y constituye un impedimento de cosa juzgada para ahora cuestionar la existencia del derecho a un debido proceso de ley en lo relativo a la determinación de los niveles de custodia en que se mantiene a los reclusos en las instituciones penales de este país. ■

Por los fundamentos anteriormente expuestos, este Tribunal ejerce la jurisdicción y competencia que le confiere la Ley de Procedimiento Administrativo Uniforme; expide el auto de revisión solicitado; y en virtud de la autoridad que le confiere la Sección 4.6 de dicha Ley, para conceder cualquier remedio que considere apropiado, ordena a la Administración de Corrección que proceda inmediatamente a revaluar al recurrente y al emitir su decisión cumpla con lo dispuesto en la Sección 3.14 de dicha Ley de Procedimiento Administrativo Uniforme.

El Juez González Rivera disiente por los mismos fundamentos expuestos en la resolución emitida en los casos consolidados Núm. KLRA-98-00282, Núm. KLRA-98-00341, Núm. KLRA-98-00488 y Núm. KLRA-98-00495.

Lo acuerda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 99 DTA 151

1. En toda evaluación de un caso en que se considere la asignación de tipo de custodia, en adición a los criterios aquí señalados, deberá tenerse presente los delitos cometidos, las circunstancias de éstos, la extensión de la sentencia dictada, tiempo cumplido en confinamiento y aquellos factores que garanticen la seguridad institucional y pública que más adelante se señalan.

A. Custodia Máxima:...

B. Custodia Mediana:...

C. Custodia Mínima:...

1. Definición - Es aquella donde, luego de un estudio detenido del caso, se determina que el confinado puede funcionar con un mínimo de controles externos o restricciones físicas y se entiende que su circulación dentro de la institución o fuera de ella no representa peligro para la población penal, los empleados o para la comunidad.

No podrá asignarse custodia mínima a ningún confinado al considerarlo el Comité inicialmente para la clasificación, excepto aquellos casos de confinados adictos a substancias controladas que de la evaluación preliminar se perfilan como candidatos potenciales a continuar el tratamiento en la comunidad, el que habían iniciado y se haya interrumpido con la reclusión, conforme lo dispuesto en el Artículo 14 de la Ley 60, según enmendada, del Departamento de Servicios Contra la Adicción.

Se aplica cuando el confinado denota tener los suficientes controles internos como para disfrutar de permisos para salir fuera de la institución penal sin custodia, para ubicarse en una institución de tipo abierta, ser ubicado en centros de tratamientos públicos o privados de la comunidad, así como para traslado a un Hogar de Adaptación Social y otros privilegios institucionales.

Se considerará la conveniencia de asignarle custodia mínima a un confinado cuando el historial social y delictivo, así como su comportamiento, reflejen mayormente los siguientes indicadores, y el análisis de los mismos no se inclina hacia la asignación de una custodia mediana.

a) Que el confinado no tenga casos pendientes por resolver en los Tribunales.

b) Que del historial social y de la evaluación ponderada del caso, se desprenda que el confinado no representa una amenaza para la población penal, empleados del Sistema o para la comunidad.

(c) Que el historial delictivo y circunstancias en que cometió el delito no revelen peligrosidad o habitualidad.

(d) Que su comportamiento observable evidencie que ha ganado sentido de responsabilidad, que ha habido crecimiento personal, que ha demostrado interés por los programas de tratamiento y ha sacado provecho de éstos y se ha trazado unas metas reales y claramente definidas para reintegrarse a la comunidad como ciudadano útil.

(e) Que su historial social y delictivo no revele un riesgo de fuga, más allá del que representa todo confinado.

(f) Que el confinado acepte y observe las normas institucionales.

(g) Que su situación emocional sea razonablemente estable, de forma tal que no represente riesgo para él, ni para sus compañeros y la sociedad en general.

(h) Que se perfile como buen candidato para recibir tratamiento en programas de comunidad y participar en actividades en la misma.

(i) Que por lo menos en los ocho (8) meses previos a su consideración para cambio de custodia de mediana a mínima, el confinado no haya sido declarado incurso en una vista administrativa por la comisión de una ofensa menos grave o falta mayor, conforme se establecen éstas en el Reglamento para los Procedimientos Disciplinarios. En los casos de Ofensa Grave deberá haber transcurrido por lo menos un (1) año.

(j) Aquellos confinados que estando en custodia mediana, muestran cambios favorables en su comportamiento observable y se evidencia marcado interés en continuar beneficiándose de los programas y servicios a su disposición.

2. Esta estipulación titulada Stipulation Regarding Classification se efectuó en el caso de *Morales Feliciano, et als. v. Pedro Rosselló González, et als.,* Civil No. 79-4 (PG), ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto

Rico y fue aprobada por ese Tribunal mediante orden de 5 de diciembre de 1994 (Docket #5429) a la cual se hace referencia en un escrito titulado Motion for Order Directing Defendants to Adopt Classification Manual and to File Plan for Implementing and Evaluating the Manual.

De acuerdo a esta estipulación, la Administración se propone sustituir el referido reglamento por otro acorde a dicha estipulación. Sin embargo, a la fecha de los hechos que dieron lugar a este recurso, ese nuevo reglamento no se estaba aplicando en la institución penal en la que está recluido el recurrente, y aún no ha sido registrado en el Departamento de Estado según dispone la Sección 2.8 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2128.